## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| SAUER CONSTRUCTION, LLC, *a Florida Limited Liability Company*, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:24-cv-05277-DCN |
| vs. | ) ) | **ORDER** |
| R AND R MASONRY, INC., *a South Carolina Corporation*, | ) ) ) | |
| Defendant. | ) ) ) | |

The following matter is before the court on defendant R and R Masonry, Inc.'s ("R&R") motion to set aside entry of default, ECF No. 9. For the reasons set forth below, the court grants the motion and orders counsel for plaintiff Sauer Construction, LLC ("Sauer") to submit an affidavit of attorney's fees and costs attributable to this motion.

## I.   BACKGROUND

This matter arises out of a construction contract dispute. ECF No. 1, Compl. Sauer is a Florida limited liability company, with its principal place of business in Jacksonville, Florida. Id. ¶ 3. R&R is a South Carolina corporation with its principal place of business in Charleston, South Carolina. Id. ¶ 4.

On June 20, 2022, R&R submitted a proposal (the "June 2022 Proposal") to Sauer for the Flight Line Support Facility project (the "Project") at Naval Weapons Station, Joint Base Charleston. Id. ¶ 6. The June 2022 Proposal contained four line items: (1) "Labor & materials to lay 8" CMU at interior warehouse walls, install vertical reinforcement, and pour reinforced cells/bond beams with grout" for $70,000.00; (2)

1

"Labor & materials to lay 8" CMU at exterior warehouse walls, install vertical reinforcement, and pour reinforced cells/piers with grout" for $107,000.00; (3) "Labor & materials to install rigid insulation, ties, weeps, flashing, and mortar net, to lay brick veneer/case stone at exterior walls of administrative building" for $135,000.00; and (4) "Labor & materials to lay 8" CMU, brick veneer, and cast stone at brick columns and at dumpster enclosure" for $35,000.00.  Id. ¶ 7; see ECF No. 1-1 at 1.  The total quote of the June 2022 Proposal was $347,000.00.  Compl. ¶ 7.  Sauer incorporated R&R's June 2022 Proposal into its prime bid for the Project.  Id.  The United States Department of the Navy ("NAVFAC") accepted Sauer's prime bid and awarded Sauer the contract for the Project.  Id. ¶ 9.

NAVFAC removed the exterior wall components from the final design of the Project.  Id. ¶ 10.  As a result, R&R submitted an updated proposal to Sauer on June 19, 2023 (the "June 2023 Proposal").  Id. ¶ 10; see ECF No. 1-1 at 2.  The June 2023 Proposal eliminated the second line item of the June 2022 Proposal regarding labor, materials, and costs for the exterior warehouse wall and contained a total quote of $310,000.00.  Compl. ¶ 10.  On June 26, 2023, Sauer allegedly notified R&R of its intent to award the subcontract for the Project to R&R.  Id. ¶ 11.  In the following months, R&R completed Sauer's subcontractor pre-qualification application and subcontractor representations, certifications, and acknowledgements forms.  Id. ¶¶ 12–14; ECF No. 1-1 at 7–10.

On February 1, 2024, Sauer purportedly contacted R&R to finalize the subcontractor agreement.  Compl. ¶ 15.  On February 7, 2024, R&R responded by submitting a revised proposal (the "February 2024 Proposal") for the Project with a total

2

quote of $427,000.00.  Id.  The February 2024 Proposal contained the second line item from the June 2022 Proposal regarding labor, materials, and costs for the exterior warehouse wall that R&R had previously removed from its June 2023 Proposal.  Id.; see ECF No. 1-1 at 15.  Sauer objected to the February 2024 Proposal and returned a marked-up copy that deducted the second line item to R&R.  Compl. ¶ 16; ECF No. 1-1 at 16.  Sauer's mark-up of the February 2024 Proposal reduced the total quote to $320,000.00.  Compl. ¶ 16.  On February 14, 2024, Sauer contacted R&R to confirm that R&R had reviewed the marked-up February 2024 Proposal and requested that R&R "provide its subcontract, bonds, and submittals as soon as possible."  Compl. ¶ 17.  R&R responded, "We will be getting those to you ASAP."  Id.; see also ECF No. 1-1 at 18.

Sauer allegedly has had no contact with R&R regarding the Project since its February 14, 2024 correspondence.  Compl. ¶ 18.  R&R performed no work on the Project.  Id. ¶ 25.  Sauer secured a substitute subcontractor to complete the Project for a total cost of $585,283.00.  Id.

Sauer filed its complaint on September 25, 2024, alleging a single cause of action for promissory estoppel under South Carolina state law.  ECF No. 1, Compl.  On November 22, 2024, Sauer filed a request for entry of default against R&R pursuant to Federal Rule of Civil Procedure 55(c).  ECF No. 6.  The clerk entered default against R&R on November 25, 2024.  ECF No. 7.  On December 6, 2024, R&R filed its motion to set aside entry of default.  ECF No. 9.  Sauer responded in opposition on December 9, 2024.  ECF No. 15.  R&R replied on February 6, 2025, ECF No. 15, to which Sauer filed a sur-reply on February 14, 2025, ECF No. 18.  The court held a hearing on the motion

on May 19, 2024.  ECF No. 22.  As such, the motion is fully briefed and ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  This "good cause" standard is liberally construed "in order to provide relief from the onerous consequences of defaults."  Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987); see also Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969) ("Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits.").  The decision to set aside an entry of default is "committed to the sound discretion of the trial court."  Lolatchy, 816 F.2d at 954.

The Fourth Circuit has articulated six factors for courts to consider in determining whether good cause to set aside entry of default is appropriate under Rule 55(c): "[1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic."  Payne ex rel. Est. of Calzada v. Brake, 439 F.3d 198, 204–05 (4th Cir. 2006).  When considering these factors, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."  Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010).  "Generally, a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious

defense." Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir. 1967).

### III.   DISCUSSION

The court considers whether the Payne factors weigh in favor of good cause to set aside entry of default against R&R.  The parties do not dispute the fourth, fifth, and sixth Payne factors, and, accordingly, the court finds that those factors weigh in favor of setting aside entry of default.  The court analyzes the remaining factors and the parties' arguments in turn.

### A.  Meritorious Defense

The first factor is whether the moving party has presented a meritorious defense. Payne, 439 F.3d at 204–05.  "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988); accord Caribbean Indus. Prod., LLC v. Allen Filtration, LLC, 2018 WL 398486, at *3 (D.S.C. Jan. 12, 2018).  A party moving to set aside entry of default "is not required to establish a meritorious defense by a preponderance of the evidence." Cent. Operating Co. v. Util. Workers of Am., 491 F.2d 245, 253 n.8 (4th Cir. 1974).

In its memorandum in support of its motion, R&R argues that it pleaded three meritorious defenses to Sauer's claim for promissory estoppel.  ECF No. 10.  R&R asserts defenses of "no clear and unambiguous promise," "unreasonable reliance," and "failure to mitigate damages" in its answer.  ECF No. 12 ¶¶ 24–37.  First, R&R contends that its proposals for the Project were not promises to perform the Project, and thus a

5

claim for promissory estoppel cannot lie. ECF No. 10 at 4. Second, R&R argues that, even if its proposals are construed to be promises, Sauer's actions were "not influenced by any alleged promise by [R&R]" because the proposals were merely pricing quotes subject to conditions and contingencies attributable to Sauer. Id. Third, R&R avers that Sauer's decision to hire a substitute contractor was an "independent business decision that unnecessarily inflated [Sauer's] alleged damages." Id. at 5. In its answer, R&R provides evidentiary support for its defenses by pointing the court to its communications with Sauer to evince that its proposals were not promises, Sauer's marked-up proposal was a counteroffer and, there was no formation of the subcontract. ECF No. 12 at 10–11. In response, Sauer argues that R&R has provided insufficient evidence and conclusory statements to support its defenses. ECF No. 13 at 7–9. However, Sauer fails to adequately address R&R's defenses, pleaded facts in the answer, or evidence. See id.

Thus, the court finds that R&R has satisfied its burden by proffering sufficient evidentiary support to establish meritorious defenses to Sauer's claim. See Augusta, 843 F.2d at 812. Accordingly, this factor weighs in favor of setting aside entry of default.

### B. Reasonable Promptness

The second factor asks whether the defaulting party acted with reasonable promptness. Payne, 439 F.3d at 204–05. This factor "must be gauged in light of the facts and circumstances of each occasion" and the weighing of the facts and circumstances is committed to the discretion of the trial judge. United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). R&R argues that it acted promptly to retain counsel and file its motion to set aside. ECF No. 10 at 5. Sauer asserts that this factor weighs against setting aside

entry of default because R&R filed its motion fifty-one days after it was served and twenty-nine days after its answer was due.  ECF No. 13 at 10.

While there was certainly delay in filing any responsive pleading after the alleged date of service, courts also look to when the defaulting party responded to the entry of default and opposing party's motion for default judgment.  See Prince Payne Enters., Inc. v. Tigua Enters., Inc, 2019 WL 1058089, at *3 (D.S.C. Mar. 6, 2019); Ashmore v. Melvin, 2016 WL 3610609, at *2 (D.S.C. July 6, 2016) ("Although Defendants failed to timely file a response to Plaintiff's Complaint, they did promptly respond to Plaintiff's Motion for Default Judgment.").  "District courts in the Fourth Circuit have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside."  Reg'l Med. Ctr. of Orangeburg v. Salem Servs. Grp., LLC, 2020 WL 1956515, at *3 (D.S.C. Apr. 23, 2020).

R&R filed its motion to set aside entry of default eleven days after the default was entered.  See ECF No. 10.  The affidavit of R&R's owner, Nathaniel Roper ("Roper"), indicates that the reasons for the delay are that of an administrative oversight coupled with a demanding workload.  ECF No. 10-1, Roper Aff. ¶¶ 1–6.  Roper further states that he "immediately sought legal counsel" upon realizing the date to respond to the complaint had passed.  Id. ¶ 7.  There does not appear to be undue delay such that the court would find that R&R did not act with reasonable promptness.  Moradi, 673 F.2d at 727.  Consequently, the court finds that this factor weighs in favor of setting aside entry of default.

## C.  Personal Responsibility

The third factor examines the personal responsibility of the defaulting party.

Payne, 439 F.3d at 204–05.  Before turning to the parties' arguments, the court takes this

opportunity to provide clarity regarding motions to set aside entry of default under Rule

55(c) and motions to set aside entry of default judgment under Rule 60(b).  In Colleton

Preparatory Academy, the Fourth Circuit stated:

> Although we have analyzed Rule 55(c) and Rule 60(b) motions using the same factors, see United States v. Moradi, 673 F.2d 725, 727–28 (4th Cir. 1982), the burden on a movant seeking relief under the two rules is not the same.  As the district court recognized, Rule 60(b) motions request relief from judgment, which implicates an interest in "finality and repose," a situation that is not present when default has been entered under Rule 55(a) and no judgment has been rendered.  Therefore, while an analysis under each rule employs similar factors, Rule 60(b)'s "excusable neglect" standard is a more onerous standard than Rule 55(c)'s "good cause" standard, which is more forgiving of defaulting parties because it does not implicate any interest in finality.

Colleton Preparatory Acad., 616 F.3d at 420 (citation omitted) (quoting Moradi, 673 F.2d

at 727–28).  Therefore, "[a]lthough the criteria set forth in Rule 60(b) may be relevant to

the determination of the presence of good cause, the standard for good cause under Rule

55(c) [for relief from entry of default] is more liberal than the standard for relief from

judgment under Rule 60(b)."  Coleman v. Schneider Elec. USA, Inc., 2015 WL 5882759,

at *4 (D.S.C. Oct. 6, 2015) (quoting Philips v. Weiner, 103 F.R.D. 177, 181 (D. Me.

1984)).

It is clear that R&R is responsible for the entry of default.  Roper acknowledges

that he personally received service on October 16, 2024.  Roper Aff. ¶ 2.  Roper accepts

responsibility for failing to respond to the complaint and states that "failure to respond to

the Complaint by the required deadline was not intentional or an attempt to avoid the

legal process."  Id. ¶ 6.  Here, while R&R is responsible for its failure to timely answer,

8

the evidence shows that that the missed deadline was likely an oversight by Roper. Accordingly, this factor does not weigh in favor in setting aside entry of default, but it is also not dispositive of the issue of good cause under the forgiving standard of Rule 55(c). See Coleman, 2015 WL 5882759, at *4.

The court does not take R&R's failure to abide by the Federal Rules of Civil Procedure lightly, but after consideration of the Payne factors, the court finds that there is good cause to set aside the entry of default and allow this action to proceed on its merits. Colleton Preparatory Acad., 616 F.3d at 421. Therefore, the court sets aside the entry of default against R&R.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to set aside the entry of default against R&R. **IT IS ORDERED** that counsel for Sauer submit an affidavit of attorney's fees and costs attributable to this motion.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 22, 2025**
**Charleston, South Carolina**